

**SO ORDERED.**

**SIGNED September 30, 2025.**

_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**

---

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| In re:<br>Linder Oil Company, A Partnership,<br>_Debtor_ | Case No. 17-51323 |
| Lucy G. Sikes, Chapter 7 Trustee and<br>the Cadle Company, II, Inc.,<br>_Plaintiffs_<br><br>v.<br><br>Crescent Bank & Trust; Consolidated<br>Reserves Company, L.C.; Roger D.<br>Linder; G. Miles Biggs, Jr.; Louisiana<br>General Oil Company; and Linder<br>Energy Company<br>_Defendants_ | Chapter 7<br><br>Judge John W. Kolwe<br><br>Adv. Proc. No. 19-5105 |

## REPORT AND RECOMMENDATION ON PRETRIAL MOTIONS

The District Court has withdrawn the reference in this and a few related adversary proceedings to allow for a trial by jury. Once before the District Court, the parties collectively filed 12 pre-trial motions, which the District Court has referred to this Court. All of these motions concern the scope of evidence to be permitted at trial, whether motions in limine or _Daubert_ motions. The Court has considered each Motion

and is now prepared to rule. The Court is issuing this ruling as a Report and Recommendation.

**THE MOTIONS**

Defendants G. Miles Biggs, Jr., Roger Linder, Consolidated Reserves Company, L.C., Louisiana General Oil Company, and Linder Energy Company (collectively, the "Non-Bank Defendants") have filed two motions:

- Motion in Limine to Exclude Evidence Inconsistent with Plaintiffs' Complaint at Trial (ECF #492) (D.Ct. #25);
- Motion in Limine to Exclude Evidence Sought to Be Introduced at Trial for an Improper Purpose (ECF #493; D.Ct. #26).

The Plaintiffs, Lucy G. Sikes, Trustee (the "Trustee") for the Chapter 7 Estate of Linder Oil Company, A Partnership (the "Debtor"), and The Cadle Company II, Inc. ("Cadle"), have filed nine motions:

- Motion to Introduce Deposition Testimony of Roberta Linder Cuccia at Trial (ECF #494; D.Ct. #27);
- Motion to Introduce Deposition Testimony of Fred B. Morgan, III at Trial (ECF #495; D.Ct. #28);
- Motion to Introduce Deposition Testimony of Bonnie Higgins at Trial (ECF #496; D.Ct. #29);
- Motion to Exclude or, Alternatively, Limit the Expert Report and Testimony of Defendants' Expert, Thomas M. Talley, P.G. (ECF #497; D.Ct. #30);
- Motion to Exclude or, Alternatively, Limit the Expert Report and Testimony of Defendants' Expert, H. Kenneth Lefoldt, Jr., CPA (ECF #498; D.Ct. #31);
- Motion to Exclude or, Alternatively, Limit the Expert Report and Testimony of Defendants' Expert, Joseph H. Neely (ECF #499; D.Ct. #32);

2

- Motion to Exclude or, Alternatively, Limit the Expert Report and Testimony of Defendants' Expert, Ralph A. Litoloff, Jr. at Trial (ECF #500; D.Ct. #33);
- Motion in Limine Regarding Cadle's Acquisition of the Loans and Other Litigation (ECF #501; D.Ct. #34); and
- Motion in Limine to Bar Evidence Relating to Enterprise Insolvency, Including Expert Testimony, at Trial (ECF #502; D.Ct. #35).

Finally, both the Non-Bank Defendants and Defendant Crescent Bank & Trust have filed a Motion to Introduce Deposition Testimony of Daniel Cadle at Trial (ECF #506; D.Ct. #43).

Thus, there are a total of 12 Motions before the Court: four *Daubert* motions, four motions concerning the use of deposition testimony at trial, and four motions dealing with other issues. However titled, all of these motions are motions in limine subject to the same general standard, addressed in the next section. For the background facts and jurisdictional analysis, the Court adopts its Ruling on Motions for Partial Summary Judgment (ECF #475).

## GENERAL STANDARD FOR MOTIONS IN LIMINE

All twelve motions are motions in limine, which is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered."[1] "Motions in limine are intended to prevent allegedly prejudicial evidence from being so much as whispered before a jury prior to obtaining the Court's permission to broach the topic."[2] "The grant or denial of a motion in limine is considered discretionary, and thus will be reversed only for an abuse of discretion and a showing of prejudice."[3] Although it is common for parties to file motions in limine, courts have routinely noted that they are often used to raise issues that would be

---

[1] *Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S. Ct. 460, 462, 83 L. Ed. 2d 443 (1984).

[2] *Cramer v. Sabine Transp. Co.*, 141 F. Supp. 2d 727, 733 (S.D. Tex. 2001).

[3] *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 643 (5th Cir. 2005) (citing *Buford v. Howe*, 10 F.3d 1184, 1188 (5th Cir. 1994)).

3

better reserved for the actual trial of the case, as Judge Doughty in the Western District recently noted:

> "It is well settled that motions in limine are disfavored." *Auenson v. Lewis*, 1996 WL 457258, at *1 (E.D. La. 8/12/1996) (citing *Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)). "Motions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial." *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980) (superseded on other grounds). "An order in limine excludes only clearly inadmissible evidence; therefore, evidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds." *Rivera v. Robinson*, 464 F. Supp. 3d 847, 853 (E.D. La. 2020) (quoting *Auenson*, 1996 WL 457258, at *1) (emphasis added). Instead, courts should reserve evidentiary rulings until trial so that questions as to the evidence "may be resolved in the proper context." *Auenson*, 1996 WL 457258, at *1. Last, a motion "set[ting] forth a [ ] laundry list of matters, most of them of a highly vague nature ... constitutes an improper 'shotgun' motion which fails to meet this court's standards for motions in limine." *Estate of Wilson v. Mariner Health Care, Inc.*, 2008 WL 5255819, at *1 (N.D. Miss. Dec. 16, 2008).[4]

Accordingly, unless evidence meets the stringent standard for exclusion at the pretrial stage, denial of a motion in limine is without prejudice to reasserting objections at trial as appropriate under the Federal Rules of Evidence.

The Court will now address each set of motions.

### *DAUBERT* MOTIONS

#### *Daubert* Standard

In determining the admissibility of expert testimony, this Court is guided by Rule 702 of the Federal Rules of Evidence and the standard established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as interpreted by the Fifth

---

[4] *United States v. Brown-Manning*, No. 3:23-CR-00213, 2025 WL 242205, at *1 (W.D. La. Jan. 17, 2025).

Circuit Court of Appeals. Under *Daubert*, district courts serve as gatekeepers, tasked with ensuring that expert testimony is both relevant and reliable before it may be presented to the jury.[5]

The Fifth Circuit has emphasized that expert testimony must be assessed for both its reliability and relevance.[6] Reliability requires an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid, while relevance requires that the testimony "assist the trier of fact to understand the evidence or to determine a fact in issue."[7]

To determine reliability, courts may consider the non-exclusive *Daubert* factors:

1. Whether the theory or technique has been tested;
2. Whether it has been subjected to peer review and publication;
3. The known or potential rate of error;
4. The existence and maintenance of standards controlling the technique's operation; and
5. Whether the methodology is generally accepted within the relevant scientific community.[8]

Expert testimony must also be based on more than "subjective belief or unsupported speculation."[9] Even a qualified expert may offer an opinion that is inadmissible if the opinion lacks a reliable foundation or if the expert has not reliably applied the methodology to the facts of the case.[10] "Although the *Daubert* analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does *not* judge the expert conclusions

---

[5] *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275–76 (5th Cir. 1998) (en banc).
[6] *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012).
[7] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007).
[8] *Daubert*, 509 U.S. at 593–94; *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[9] *Daubert*, 509 U.S. at 590.
[10] *See Kumho Tire*, 526 U.S. at 153-54.

themselves."[11] Ultimately, the burden is on the party offering the expert to establish admissibility.[12]

In this case, the four *Daubert* motions generally do not attack the reliability of the expert testimony, i.e., the reasoning or methodology of the experts, which is typically the more complicated determination for a *Daubert* motion and the prong that benefits most from deciding in advance of trial to save the jury's time. Instead, the motions primarily focus on the relevance of the expert testimony, placing these motions squarely within the typical motion in limine analysis. The Court now turns to each of the Plaintiffs' *Daubert* motions.

<u>Motion Regarding Thomas M. Talley, P.G. (ECF #497; D.Ct. #30)</u>

The Plaintiffs challenge the use of Thomas M. Talley, a geologist who issued an expert report, on the grounds that his opinions on the so-called "group insolvency" or "enterprise insolvency" theory are irrelevant to this trial based on this Court's rejection of that theory in its Ruling on multiple Motions for Partial Summary Judgment.[13] The Plaintiffs refer to a series of oil-and-gas reserves reports prepared by Collarini Associates in 2015-2016 (the "Collarini Reports"), and the Plaintiffs argue that Crescent is trying to use Talley to vouch for the reliability of those third-party reports, with the "apparent objective [being] to enable its second expert, H. Kenneth Lefoldt, Jr., CPA…to use the Collarini Reports as the basis for his opinion that the Linder Group was solvent at the relevant times, and thereby refute the Trustee's claims."[14]

---

[11] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (citing *Daubert*, 509 U.S. at 594–95) (emphasis in *Guy*).

[12] *See Moore*, 151 F.3d at 276.

[13] *See* Ruling on Motions for Partial Summary Judgment, pp. 19-23 (ECF #23).

[14] *See* Plaintiffs' Memorandum in Support, pp. 2-3 (ECF #497-1). Remarkably, neither the Plaintiffs nor the Defendants actually attached Mr. Talley's opinions. The Plaintiffs have submitted a 13-page Expert Report from Mr. Talley dated June 21, 2024 (ECF #503) that does not contain a single opinion, only Mr. Talley's qualifications and information on his employer. The Defendants submitted excerpts from a deposition transcript with their Opposition, as did the Plaintiffs with their Reply, but that is the extent of the evidence before the Court.

6

In connection with its March 31, 2025 Ruling on Motions for Partial Summary Judgment (ECF #475), this Court rejected Crescent's "group insolvency" theory.[15] Crescent's theory is that solvency for purposes of the Louisiana revocatory action should be determined by reference to several companies that are legally related to the Debtor, but not directly liable to the creditors, rather than the solvency of just the Debtor, which is the only entity liable to the unsecured creditors. The Court found that the theory has no support in Louisiana statutory or case law and therefore rejected it. That Ruling remains the law of the case, and thus the Defendants may not rely on Mr. Talley's report or testimony that is contrary to the Court's previous Ruling. Thus, to the extent Mr. Talley's testimony seeks to address the "group insolvency" theory for purposes of the Louisiana revocatory action, the Court recommends that this motion be granted in part. Otherwise, to the extent the Defendants might use Mr. Talley's testimony for any other proper purpose, the Court recommends that this motion be denied in part so that the Defendants may address any such argument at trial.

Motion Regarding H. Kenneth Lefoldt, Jr., CPA (ECF #498; D.Ct. #31)[16]

The Plaintiffs seek to exclude the testimony of H. Kenneth Lefoldt, Jr., CPA, proposed expert witness for the Non-Bank Defendants. First, they attack the reliability of his testimony to the extent he relies on the contents of the Collarini Reports referenced above. As the Plaintiffs note, Fed. R. Evid. 703 permits experts to base their opinions on facts or data from other sources, but they argue that Mr. Lefoldt is simply parroting the findings of the Collarini Reports. Put another way, they claim Mr. Lefoldt is not providing an original opinion. In response, Crescent argues that courts have allowed experts to rely on reserve reports in rendering expert opinions, and the extent of Mr. Lefoldt's reliance on the reports goes to the weight of

---

[15] *See* Ruling on Motions for Partial Summary Judgment, pp. 19-23 (ECF #475).
[16] The Plaintiffs initially attached the wrong Memorandum in Support to their motion but submitted the correct Memorandum in Support as a separate filing. *See* Memorandum in Support of Lefoldt Motion (ECF #504).

7

his testimony, not its admissibility.[17] This Court agrees with Crescent on this point and does not find Mr. Lefoldt's report or anticipated testimony to be unreliable on that basis.

The Plaintiffs' primary argument with respect to Mr. Lefoldt is that his testimony is not relevant because it concerns the "group insolvency" theory that the Court rejected. The Court agrees and recommends treating this motion the same as the motion concerning Mr. Talley's testimony: granting it in part to the extent the testimony concerns the "group insolvency" theory in the context of the Louisiana revocatory action but otherwise denying it in part and determining in the context of trial whether it may be relevant to any other issue in the case.[18]

<u>Motion Regarding Joseph H. Neely (ECF #499; D.Ct. #32)</u>

The Plaintiffs have also filed a *Daubert* Motion concerning the use of Joseph H. Neely's proposed expert testimony. Mr. Neely is the former director of the Federal Deposit Insurance Corporation in Washington, D.C., and the former commissioner of the Department of Banking and Consumer Finance for the State of Mississippi. His expert report, dated June 6, 2024, sets out four opinions regarding the banking relationships among the various parties, including the Debtor and Crescent, specifically:

- Opinion #1: There is no basis to suggest that Linder's personal relationship with Crescent executives compromised the business relationship to the benefit of Consolidated and/or Crescent.

- Opinion #2: In this case, Plaintiffs' allegations that Crescent lacked concern for intercompany transfers, source of payments and other

---

[17] *See* Crescent's Opposition, pp. 6-8 (ECF #524).

[18] For its part, Crescent argues that the group insolvency theory may be relevant to supposed Louisiana Oil Well Lien Act ("LOWLA") claims by the three putative predicate creditors in this case. *Id*. at pp. 10-11 (ECF #524). As Crescent is well aware, no such LOWLA claims have ever been at issue in this case, so the Court is doubtful that evidence of the solvency of the entire so-called Linder Oil Group would be relevant to any issue or would do anything other than confuse the jury.

relationships does not support the conclusion that Crescent departed from acceptable banking practices or breached any banking regulations.

- Opinion #3: There is no evidence to suggest that the Debtor was in concert with Crescent Bank and Consolidated to defraud the Debtor's creditors, including First NBC.

- Opinion #4: The purchaser in a loan sale transaction with the FDIC assumes the position of the former lender, via the receivership transfer, regarding the former lender's contractual relationship with the borrower.

*See* Neely Expert Report (ECF #512-1). Mr. Neely explains these opinions with extensive discussion in his report.

The Plaintiffs claim Mr. Neely's opinions should be excluded because they opine on legal matters which are better handled by the Court. For Opinion #2, which opines that Crescent did not breach banking regulations, the Plaintiffs argue that that point has never even been alleged and that the opinion should be excluded on that basis. The Defendants point out that experts are permitted to discuss applicable laws and regulations in reaching their own opinions, and Mr. Neely's opinions are not necessarily simply pure legal conclusions.

Although a close call, particularly with respect to Opinion #4 the Court tends to agree with the Defendants, and finds, based on the record before it, that Mr. Neely's opinions are not, on their face, improper, and potential problems could be alleviated with appropriate jury instructions. Certainly Mr. Neely is qualified to opine on banking matters based on his extensive experience, and the Court cannot say at this time that his opinions are unreliable or irrelevant in the abstract, as presented in these pretrial motions.

The Court therefore recommends that this motion be denied, and any specific objection the Plaintiffs' may have can be addressed at trial.

<u>Motion Regarding Ralph A. Litolff, Jr. at Trial (ECF #500; D.Ct. #33)</u>

The Plaintiffs attack the anticipated testimony of Ralph A. Litolff, Jr., whom the Non-Bank Defendants have retained to opine on the solvency of the Debtor during the period of 2010-2016, on the grounds that he is not an expert on statutory insolvency standards and that he bases his valuation opinions on the Debtor's tax returns. In the Plaintiffs' view, his expert testimony should go beyond the tax returns and rely on other independent facts to prove the Debtor's solvency. In opposition, the Non-Bank Defendants essentially argue that Mr. Litolff does have experience with the statutory insolvency standards and that the Plaintiffs' arguments really go to the weight of Mr. Litolff's testimony, which the jury should be able to decide.

The Court agrees with the Non-Bank Defendants' position. The Court does not find that Mr. Litolff's methodology is flawed on its face or that it should be excluded simply because he relied on the Debtor's filed tax returns. Instead, the Court finds that the Plaintiffs' argument primarily goes to the weight of Mr. Litolff's anticipated testimony, and that is a matter that can certainly be addressed through cross-examination before the jury. Accordingly, the Court recommends that this motion be denied.

## MOTIONS CONCERNING USE OF DEPOSITION TESTIMONY AT TRIAL

The Court now turns to the four motions concerning the use of deposition testimony at trial. The admissibility of deposition testimony at trial is governed by Rule 32 of the Federal Rules of Civil Procedure. Under Rule 32(a)(4), a party may use deposition testimony in lieu of live testimony at trial if the witness is unavailable, including when the witness is outside the court's subpoena power. Specifically, Rule 32(a)(4)(B) provides, in relevant part:

> A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds: (B) that the witness is more than 100 miles from the place of hearing or trial... unless it appears that the absence was procured by the party offering the deposition....

The 100-mile limitation aligns with the subpoena power of the Court as outlined in Rule 45(c)(1)(A), which generally limits subpoenas for trial attendance to persons within 100 miles of the courthouse or within the state if certain conditions are met. *See* Fed. R. Civ. P. 45(c).

Pre-recorded video deposition testimony or the reading of deposition testimony are "acceptable substitute[s] for oral testimony when in-court observation of the witness is extremely difficult or virtually impossible."[19] "The party who wishes to use the deposition has the burden of showing the unavailability of the witness."[20]

> The requisite showing to permit deposition testimony over live testimony is steep. Deposition testimony is prohibited unless "live testimony from the deponent is impossible or highly impracticable." [*Swearingen v. Gillar Home Health Care, L.P.*), 759 Fed. Appx. 322, 324 (5th Cir. 2019] (quoting *McDowell v. Blankenship*, 759 F.3d 847, 851 (8th Cir. 2014)). This standard has been likened to when "the witness [is] unavailable to testify because he is dead." *Ruelas v. W. Truck & Trailer Maint., Inc.*, 2019 WL 13150106 at *2 (W.D. Tex. Oct. 1, 2019) (internal marks omitted). The burden of attending trial must be more than mere inconvenience. *See Swearingen*, 759 Fed. Appx. at 324 (seeing little relevance in the fact that a witness would miss work); *see also Ruelas*, 2019 WL 13150106 at *2 (denying use of doctor's deposition at trial because "he is a currently practicing orthopedic surgeon and requiring him to appear live in lieu of treating patients is not warranted."). A showing of one of the Rule 32(a)(4) exceptions is also strictly enforced. *See Swearingen*, 759 Fed. Appx. at 322 (witness located 95.5 miles away was not "sufficiently close" to satisfy Rule 32(a)(4)(B)).[21]

Significantly, the exceptions are alternative, so a party need only prove that one of the exceptions exists, such as the witness being located more than 100 miles

---

[19] *Greinstein v. Granite Servs. Int'l, Inc.*, No. 2:18-CV-208-Z-BR, 2023 WL 3943231, at *1 (N.D. Tex. June 9, 2023) (quoting *Swearingen v. Gillar Home Health Care, L.P.*), 759 Fed. Appx. 322, 324 (5th Cir. 2019)).

[20] *Swearingen v. Gillar Home Health Care, L.P.*, 759 F. App'x 322, 324 (5th Cir. 2019) (citing *Jauch v. Corley*, 830 F.2d 47, 50 (5th Cir. 1987)).

[21] *Greinstein, id*. at *2.

11

away, to satisfy the exception to the use of deposition testimony. However, the proponent of the deposition must still prove that the evidence is admissible:

> In considering the use of depositions at a trial or hearing, it is helpful to remember that the problem has two aspects. First, the conditions set forth in Rule 32(a) must be satisfied before the deposition can be used at all. Second, when it is found that these conditions authorize the use of the deposition, it must be determined whether the matters contained in it are admissible under the rules of evidence. Under some circumstances state law may be determinative of the second point. But state law has no bearing on the first, which is controlled solely by Rule 32(a) itself.[22]

In this case, all four motions involve witnesses who live more than 100 miles from the courthouse, so Rule 32(a)(4)(B)'s exception is satisfied, leaving the issue of whether that testimony is admissible.

### Motion to Introduce Deposition Testimony of Roberta Linder Cuccia (ECF #494; D.Ct. #27)

The Plaintiffs seek to use portions of the deposition of Roberta Linder Cuccia at trial because she testified that she received benefits and paychecks from the Debtor even though she was not actually employed by the Debtor, and she purportedly invoked her Fifth Amendment privilege against self-incrimination in the deposition, which under case law cited by the Plaintiffs makes the deposition available for use at trial.

In response, the Defendants argue that the only reason the Plaintiffs seek to introduce the testimony is to point to her invocation of the Fifth Amendment, and the Fifth Circuit has held that invoking the right is an ambiguous response. Therefore, the Defendants argue that the deposition testimony would be unfairly prejudicial or misleading to the jury.

---

[22] Wright & Miller, Federal Practice and Procedure (3d ed.), § 2142 (General Principles Relating to the Use of a Deposition) (footnotes omitted).

Based on the Court's review of the submitted deposition excerpts and the arguments of the parties, the Court recommends that the Plaintiffs' motion be denied in part and granted in part as follows:

> **Denied in Part**. The Court agrees with the Defendants that any reference to Ms. Cuccia's invocation of the Fifth Amendment in her deposition testimony would be unfairly prejudicial and could possibly mislead the jury. Thus, the Court recommends that the Plaintiffs' motion to use Ms. Cuccia's invocation of the Fifth Amendment be denied in part.

> **Granted in Part**. Since Ms. Cuccia's testimony regarding the status of her employment with the Debtor and the benefits and paychecks she received from the Debtor appear to be relevant, and thus admissible, the Court recommends that this motion be granted in part.

Motion to Introduce Deposition Testimony of Fred B. Morgan, III (ECF #495; D.Ct. #28);

The Court previously denied the Plaintiffs' Motion to Compel Deposition of Fred Morgan by Order dated July 17, 2024 (ECF #390), in large part because Crescent argued that he had already given an extensive Rule 2004 Examination deposition on behalf of Crescent in Debtor's main bankruptcy case, and because any additional deposition would be a burden on Mr. Morgan, who was in poor health at the time (undergoing major cancer treatments) and was not expected to be able to testify at trial. The Court's denial of that motion to compel a second deposition was premised on the fact that Mr. Morgan's Rule 2004 Examination testimony might be used at trial in lieu of live testimony.

Thus, the Court recommends that the Plaintiffs' motion be granted, that the Defendants be allowed to counter-designate testimony from the deposition for their own use at trial as set out in Exhibit A to their Opposition (ECF #527-1), and that

the Plaintiffs' own designations be allowed as set out in their Reply (ECF #560) and the Exhibit thereto (ECF #560-1).

> ### Motion to Introduce Deposition Testimony of Bonnie Higgins (ECF #496; D.Ct. #29)

There was no objection to this Motion, and the Court recommends that it be granted, allowing the Plaintiffs to use the deposition testimony of Bonnie Higgins at trial, subject to any proper evidentiary objections raised at trial.

> ### Motion to Introduce Deposition Testimony of Daniel Cadle (ECF #506; D.Ct. #43).

Finally, there was no objection to this Motion, and the Court recommends that it be granted, allowing the Plaintiffs to use the deposition testimony of Daniel Cadle at trial, subject to any proper evidentiary objections raised at trial and subject to the caveat, as explained below in connection with Plaintiffs' Motion in Limine Regarding Cadle's Acquisition of the Loans and Other Litigation (ECF #501; D.Ct. #34), that any reference to the purchase price should be excluded except to the extent that the Plaintiffs make it a live issue by referring to the Defendants' attempted purchase of the same debt for a low price.

## REMAINING MOTIONS

The Court now turns to the remaining four motions, which concern more general issues.

> ### Non-Bank Defendants' Motion in Limine to Exclude Evidence Inconsistent with Plaintiffs' Complaint at Trial (ECF #492) (D.Ct. #25)

The Non-Bank Defendants seek to exclude evidence allegedly inconsistent with the Plaintiffs' Complaint at trial. First, they argue that the Complaint states that Cadle is the successor to First NBC Bank ("FNBC") and is a secured creditor, so any evidence contrary to those assertions must be excluded. (The Non-Bank Defendants also argue that Cadle is imputed with FNBC's knowledge, but that assertion is beyond the scope of this motion, which only seeks to exclude evidence inconsistent with the Complaint, not to make legal determinations.) In response, the Plaintiffs

14

argue that this Court has already ruled on these matters multiple times, and this motion in limine effectively represents a third bite at the apple. Regardless of that issue, the Plaintiffs correctly point out that Cadle's Proofs of Claim only assert that $4.17 million of its claim, a tiny percentage, is secured, and the Complaint never states that Cadle is fully secured. Thus, the motion should be denied to the extent it seeks to exclude evidence that Cadle is only partially secured.

Furthermore, there is no question that Cadle is a successor in interest to FNBC, and Cadle has never claimed otherwise. The real significance to the Defendants of Cadle's status as FNBC's successor in interest is their argument that that status imputes FNBC's knowledge to Cadle and therefore destroys certain claims by the Plaintiffs. The Court has not previously addressed the question of whether any knowledge imputed to Cadle could affect the Trustee's claims. Thus, to the extent the motion seeks to preclude Cadle from arguing that it is not a successor in interest to FNBC, it should be granted, but to the extent the motion seeks to preclude the Plaintiffs from making any argument regarding knowledge supposedly imputed to Cadle and its effect on the case, it should be denied, as that question remains open, and any evidence on that point cannot be said to be clearly inadmissible prior to trial.

The Non-Bank Defendants also argue that the Plaintiffs should not be able to recover the so-called Partner Distributions beyond what they identified in the Amended Complaint. Paragraph 13 of the Amended Complaint alleges that Mr. Linder and Mr. Biggs made distributions of almost $9 million in 2009 and 2010.[23] Paragraph 55 states: "The Debtor's financial statements also reveal that the Debtor made 'partners [sic] distributions' in 2009 of $4,374,000 and in 2010 of $4,568,500 (the 'Partner Distributions')."[24] The Defendants argue that these are the only Partner Distributions the Plaintiffs may seek to recover.

The Plaintiffs argue that there were similar distributions made from 2010 through 2017 and that this is really a disguised motion for summary judgment rather than a mere evidentiary motion. The Court respectfully disagrees. First, the Plaintiffs

---

[23] Amended Complaint, ¶ 13 (ECF #74).
[24] *Id.*, ¶ 55).

15

specifically defined the Partner Distributions to be those made in 2009 and 2010 in their own Amended Complaint. Second, the Defendants have not waived this argument. The Non-Bank Defendants' Memorandum in Support of Motion for Summary Judgment, for example, argues that the Amended Complaint overstated the amount of Partner Distributions in 2009 and 2010.[25]

Based on the case law cited by the Non-Bank Defendants,[26] it seems that the Partner Distributions, as defined in the Amended Complaint, include only distributions made in 2009 and 2010, and any evidence of Partner Distributions from outside that time period should be excluded from consideration of any *award to or recovery by* the Plaintiffs based on Partner Distributions specifically. However, the Court does not believe that a flat exclusion of all evidence of such distributions should be made prior to trial. It seems clear to the Court that the nature of the Plaintiffs' claims, including the allegations of a pattern of fraud, may require reference to distributions and other transactions for other purposes. It is not proper to effectively close off any reference to evidence because one use might not be permissible (i.e., it should not be used in determining any award to or recovery by the Plaintiffs) if it could be permissible for other purposes. Thus, with respect to Partner Distributions, the Court recommends that this motion be granted in part and denied in part.

<u>Non-Bank Defendants' Motion in Limine to Exclude Evidence Sought to Be Introduced at Trial for an Improper Purpose (ECF #493; D.Ct. #26)</u>

In this motion, the Non-Bank Defendants seek to exclude a 2011 DOI letter and 2009 misdemeanor conviction involving the Debtor, as well as the deposition of Roberta Linder Cuccia, because that evidence's probative value is substantially outweighed by the danger of unfair prejudice.

---

[25] *See* Non-Bank Defendants' Memorandum in Support of Motion for Partial Summary Judgment, pp. 16-18 (ECF #423-1).

[26] See *Cunningham v. Offshore Specialty Fabricators, Inc.*, 2010 U.S. Dist. LEXIS 163635, *34-35 (E.D. Tx. 2010); *In re Corland Corp.*, 967 F.2d 1069, 1079 (5th Cir. 1992); and *United States ex rel. Ghaprial v. Quorum Health Resources, Inc.*, 1999 U.S. Dist. LEXIS 325, *12-13 (E.D. La. 1999).

16

First, the Defendants argue that the Debtor's 2009 misdemeanor conviction for failing to implement sufficient safeguards to detect and prevent the discharge of produced water into a body of water is more than 10 years old and therefore, under Fifth Circuit case law, by definition unduly prejudicial. The Defendants argue that this evidence is not even relevant, so any prejudice would outweigh its probative effect. The Plaintiffs argue that the Debtor's actions in connection with the 2009 misdemeanor conviction could be used to impeach the testimony of defendants Mr. Linder and Mr. Biggs to the extent they assert that they did not have authority over the Debtor. Given that there are numerous other ways to prove that those individuals exercised control and that the 2009 misdemeanor for failing to implement certain environmental controls does not relate to any of the claims at issue here, the Court finds that any probative value would be substantially outweighed by potential prejudice. The Court recommends that this motion be granted in part with respect to the 2009 misdemeanor conviction.

Similarly, the Defendants argue that a 2011 letter to the Debtor from the U.S. Department of the Interior concerning civil penalties for violation of a regulation should be excluded on the same basis. The Court agrees. The Plaintiffs argue that the circumstances surrounding the issuance of the 2011 letter demonstrates alleged false statements by Mr. Biggs and Mr. Linder and shows that they exercised control over the Debtor. The Court finds that the letter is not relevant to the Plaintiffs' claims because the circumstances giving rise to the letter are not at issue in this dispute, while the suggestion that the individual Defendants made false statements is prejudicial. Furthermore, it is not seriously disputed that Mr. Biggs and Mr. Linder exercised control over the Debtor, and there are many other ways to prove that fact. Because the main use of this otherwise irrelevant evidence seems to be to suggest that the individual Defendants are generally untrustworthy, the Court finds that the prejudicial effect of the 2011 letter outweighs any probative value and should therefore be excluded. The Court therefore recommends that the motion be granted in part with respect to the letter.

17

Finally, the Defendants seek to exclude the deposition and text messages of Roberta Linder Cuccia, Mr. Linder's daughter and a non-party to this proceeding. The Defendants argue that the Plaintiffs will seek to use the deposition *solely* to point to her invocation of the Fifth Amendment, which would be unduly prejudicial. In connection with the Plaintiff's Motion to Introduce Deposition Testimony of Roberta Linder Cuccia (ECF #494; D.Ct. #27), discussed above, the Court already found that referring to Ms. Cuccia's invocation of the Fifth Amendment would indeed be unduly prejudicial, and this motion should be granted with respect to the Fifth Amendment invocation. However, the deposition and text messages contain other evidence beyond the limited invocation of the Fifth Amendment, and that evidence could be admissible. Thus, the Court recommends that this motion be denied in part as to the deposition and text messages unrelated to the Fifth Amendment issue.

<u>Plaintiffs' Motion in Limine Regarding Cadle's Acquisition of the Loans and Other Litigation (ECF #501; D.Ct. #34)</u>

In this motion, the Plaintiffs seek to exclude any evidence regarding Cadle's acquisition of the FNBC loans for less than face value and evidence of other related litigation, on the ground that what Cadle paid for the loans is irrelevant, and the evidence regarding Cadle's litigation practices in other matters would not only be irrelevant but would be unfairly prejudicial in painting Cadle as litigious.

The Defendants argue that the evidence of what Cadle paid for the loans is relevant because the Amended Complaint seeks to portray Crescent in a bad light for attempting to buy the loans for a relatively small sum (which was, as the Defendants acknowledge, less than what Cadle paid), and because Crescent's status as holder in due course is at issue.

First, the Court thinks the probative value of the facts concerning Cadle's purchase is very low, given that Cadle purchased the debt after the petition date, and Cadle's actions are not really in question. Furthermore, Crescent's status as holder in due course has never really been at issue throughout the entire course of this protracted adversary proceeding, whether in the Defendants' various answers to the complaint or in their motions. Thus, evidence of Cadle's acquisition of the debt does

18

not seem relevant, while there is a risk of jury confusion and prejudice to Cadle, and the Court would recommend granting this motion absent any other factors.

However, in the interest of fair play, to the extent the Plaintiffs might attempt to suggest fraudulent intent from the fact that the Defendants sought to purchase the debt for a low price, then the Defendants should be able to counter that inference by presenting evidence that Cadle itself purchased the debt for a similarly low price. Out of an abundance of caution, the Court recommends granting this motion except to the extent the Plaintiffs seek to introduce evidence of the Defendants' attempted purchase of the debt.

<u>Plaintiffs' Motion in Limine to Bar Evidence Relating to Enterprise Insolvency, Including Expert Testimony, at Trial (ECF #502; D.Ct. #35)</u>

The Plaintiffs seek to exclude any evidence of the Defendants' "enterprise insolvency" or "group insolvency" theory, which is a theory put forward by the Defendants that insolvency must be determined not for the individual Debtor but for the entire group of Debtor-affiliated companies for purposes of satisfying the insolvency element of the Plaintiffs' claims. The Plaintiffs based this motion on the fact that this Court, in its Ruling on Motions for Partial Summary Judgment, this rejected the group insolvency theory altogether. Because the Court has already rejected the group insolvency theory, any evidence pertaining to it is irrelevant and should be excluded with respect to the insolvency element of the Plaintiffs' claims.

Tellingly, the Defendants' opposition continues to assert the group insolvency theory and amounts to a collateral attack on the Court's Ruling on Motions for Partial Summary Judgment. The Court will not reverse that decision, and the Defendants should not be able to confuse the jury with reference to a concept that has no legal basis.[27]

The Court is therefore inclined to recommend that this motion be denied. However, the Court is mindful of the fact that references to the financial health of

---

[27] *See also* footnote 18, supra.

19

the Debtor and generally affiliated entities may be relevant to other defenses in this case, such as Crescent's reasoning in deciding to lend to certain entities in the first place, and it is impossible to predict in advance whether there might be some proper purpose or how to appropriately limit the scope of such evidence. Accordingly, out of an abundance of caution, the Court recommends that this motion be granted in part to the extent the Defendants seek to discuss "group insolvency" in the context of the Louisiana revocatory action but otherwise denied in part, allowing the parties to take up the issue at trial in the context of a live dispute.

## RECOMMENDED DISPOSITION OF EACH MOTION

For the reasons set out above,

IT IS RECOMMENDED that the Plaintiffs' Motion to Exclude or, Alternatively, Limit the Expert Report and Testimony of Defendants' Expert, Thomas M. Talley, P.G. (ECF #497; D.Ct. #30) be GRANTED IN PART with respect to testimony regarding the "group insolvency" theory in connection with the Louisiana revocatory action but otherwise DENIED IN PART.

IT IS FURTHER RECOMMENDED that the Plaintiffs' Motion to Exclude or, Alternatively, Limit the Expert Report and Testimony of Defendants' Expert, H. Kenneth Lefoldt, Jr., CPA (ECF #498; D.Ct. #31) be GRANTED IN PART with respect to testimony regarding the "group insolvency" theory in connection with the Louisiana revocatory action but otherwise DENIED IN PART.

IT IS FURTHER RECOMMENDED that the Plaintiffs' Motion to Exclude or, Alternatively, Limit the Expert Report and Testimony of Defendants' Expert, Joseph H. Neely (ECF #499; D.Ct. #32) be DENIED.

IT IS FURTHER RECOMMENDED that the Plaintiffs' Motion to Exclude or, Alternatively, Limit the Expert Report and Testimony of Defendants' Expert, Ralph A. Litolff, Jr. at Trial (ECF #500; D.Ct. #33) be DENIED.

IT IS FURTHER RECOMMENDED that the Plaintiffs' Motion to Introduce Deposition Testimony of Roberta Linder Cuccia at Trial (ECF #494; D.Ct. #27) be DENIED IN PART as to her invocation of the Fifth Amendment but otherwise

20

GRANTED IN PART, permitting the Plaintiffs to use her testimony concerning, inter alia, the status of her employment with the Debtor and the benefits and paychecks she received from the Debtor.

IT IS FURTHER RECOMMENDED that the Plaintiffs' Motion to Introduce Deposition Testimony of Fred B. Morgan, III at Trial (ECF #495; D.Ct. #28) be GRANTED, that the Defendants be allowed to counter-designate testimony from the deposition for their own use at trial as set out in Exhibit A to their Opposition (ECF #527-1), and that the Plaintiffs' own designations be allowed as set out in their Reply (ECF #560) and the Exhibit thereto (ECF #560-1).

IT IS FURTHER RECOMMENDED that the Plaintiffs' Motion to Introduce Deposition Testimony of Bonnie Higgins at Trial (ECF #496; D.Ct. #29) be GRANTED.

IT IS FURTHER RECOMMENDED that the Defendants' Motion to Introduce Deposition Testimony of Daniel Cadle (ECF #506; D.Ct. #43) be GRANTED.

IT IS FURTHER RECOMMENDED that the Non-Bank Defendants' Motion in Limine to Exclude Evidence Inconsistent with Plaintiffs' Complaint at Trial (ECF #492) (D.Ct. #25) be GRANTED IN PART insofar as the Plaintiffs seek to recover damages under their Partner Distributions claim for distributions before 2009 or after 2010 but otherwise DENIED IN PART.

IT IS FURTHER RECOMMENDED that the Non-Bank Defendants' Motion in Limine to Exclude Evidence Sought to Be Introduced at Trial for an Improper Purpose (ECF #493; D.Ct. #26) be GRANTED IN PART with respect to the 2009 misdemeanor conviction, the 2011 Department of the Interior letter, and Roberta Linder Cuccia's invocation of the Fifth Amendment, but otherwise DENIED IN PART.

IT IS FURTHER RECOMMENDED that the Plaintiffs' Motion in Limine Regarding Cadle's Acquisition of the Loans and Other Litigation (ECF #501; D.Ct. #34) be GRANTED except to the extent the Plaintiffs seek to introduce evidence of the Defendants' attempted purchase of the debt.

IT IS FURTHER RECOMMENDED that the Plaintiffs' Motion in Limine to Bar Evidence Relating to Enterprise Insolvency, Including Expert Testimony, at Trial (ECF #502; D.Ct. #35) be GRANTED IN PART with respect to testimony regarding the "group insolvency" theory in connection with the Louisiana revocatory action but otherwise DENIED IN PART.

22